## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STATE FARM INDEMNITY COMPANY,** | Civ. No. 2:13-01052 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **KISHORI SHAH, M.D., GARDEN STATE ANESTHESIA AND PAIN MANAGEMENT ASSOCIATES, LLC, and HARSHAD PATEL,** | |
| **Defendant.** | |

<u>**WILLIAM J. MARTINI, U.S.D.J.:**</u>

Plaintiff State Farm Indemnity Company ("State Farm") accuses Defendants of operating a fraudulent scheme in violation of the New Jersey Insurance Fraud Prevention Act ("NJIFPA"), N.J.S.A. 17:33 A-1 *et seq*.[1] Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendants' motion will be **DENIED**.

### I.   BACKGROUND

This dispute centers on the operation of Defendant Garden State Anesthesia and Pain Management Associates, LLC ("Garden State"). As its name suggests, Garden State was formed as a New Jersey professional limited liability corporation for the purpose of providing anesthesia and pain management services to its patients. As an underwriter for automobile insurance in the State of New Jersey, State Farm provides Personal Injury Protection Benefits ("PIP Benefits") to insured individuals who have been injured in automobile accidents. Over the better part of a decade, Garden State submitted PIP Benefits claims to State Farm for services it has rendered to its patients. In its complaint, State Farm alleges that Garden State was owned and controlled by a lay person – specifically, Defendant Harshad Patel – in violation of regulations promulgated by the New Jersey Board of Medical Examiners. Consequently, State Farm contends, Defendants claims for PIP Benefits were in violation of the NJIFPA. Defendants deny those allegations

---

[1] This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1).

and insist that Garden State has always been owned by Defendant Kishori Shah, who is a qualified licensed physician under the relevant regulations.

Defendants now move for summary judgment.  Thus, the issue before the Court is whether no reasonable trier of fact could conclude that Dr. Patel owned and controlled Garden State.  Unless otherwise noted, the facts below are undisputed.

## A. <u>Formation of Garden State</u>

Garden State Anesthesia Associates, LLC – which, according to Defendants, served as a predecessor to Garden State – was formed on August 17, 2007.  The relevant Certificate of Formation identifies Dr. Shah as the company's sole member/manager.  *See* Defs' Statement of Undisputed Material Facts ("Defs' Statement") at ¶ 7.  Garden State fully came into the existence on May 1, 2008, when a Certificate of Amendment was filed with the State of New Jersey.  The Certificate of Amendment identifies Dr. Natalio Damien as the sole member/manager of Garden State.  *See* Plf's Response to Defs' Statement of Undisputed Material Facts ("Plf's Response") at ¶¶ 7-13.  However, Defendants claim that this was a mistake—it was actually intended that Dr. Damien and Dr. Shah both be listed as managers on the Certificate of Amendment.  *See* Defs' Statement at ¶ 9.  According to testimony from Drs. Shah, Damien, and Patel, the plan was for Dr. Shah to own 95% percent of Garden State, while Dr. Damien would own the remaining 5%.  *See id.* at ¶¶ 10-11.  Both parties agree that under the applicable regulations promulgated by the Board of Medical Examiners, both Dr. Shah and Dr. Damien were duly licensed health care professionals who were legally permitted to own Garden State.  *See id.* at 3.  Dr. Patel, on the other hand, is not a medical provider,[2] and therefore cannot have an ownership stake in Garden State without violating applicable regulations.  *See id.* at 2.

Dr. Damien claims that he has not participated in Garden State's operations since either 2010 or 2011, but thinks that he may still legally be a member of the company.  *See* Ex. F2 to Defs' Motion, at 353:13-25.  In contrast, Dr. Shah has testified that she took full ownership of Garden State after receiving the remaining 5% stake from Dr. Damien in late 2010 or early 2011.  *See* Ex. E1 to Defs' Motion, at 20:2-14.  Dr. Shah's position is supported by the fact that in 2011, Garden State filed another Certificate of Amendment, which identified Dr. Shah as the sole owner.  *See* Defs' Statement at ¶ 15.  Despite this overlap of ownership, both Drs. Damien and Shah recall having little, if any, discussions with each other about Garden State.  *See* Plf's Statement of Undisputed Material Facts ("Plf's Statement") at ¶ 3.

Dr. Damien believes that it was Dr. Patel's idea to create Garden State.  *See id.* at ¶ 8.  Further, Dr. Patel provided Garden State with its initial capital funding.  *See id.* at ¶ 9.  In addition to provided initial funding, Dr. Patel contributed other funds to Garden State in the form of interest-free loans.  *See* Plf's Response at ¶¶ 29-32.     Dr. Patel also had

---

[2] Dr. Patel holds a PhD in biochemistry.

exclusive control over Garden State's bank account. *See id.* at ¶ 13. Specifically, Dr. Patel was the only individual authorized to open deposits, endorse checks, and borrow money on behalf of Garden State. *See id.* Moreover, the relevant bank authorization form lists only Dr. Damien as a member, and makes absolutely no mention of Dr. Shah. *See id.*

### B.  Management Services Agreement

On March 1, 2008, Garden State entered into a Management Services Agreement ("MSA") with A.P. Diagnostic Imaging, Inc. ("APDI"), which is owned by Dr. Patel. *See* Defs' Staement at ¶¶ 19-20. Under the MSA, APDI was required to undertake a variety of managerial functions, including preparing business reports. *See* Plf's Statement at ¶ 15. However, APDI did not prepare one business report in connection with Garden State. *See id.*[3] While admitting that APDI did not fill out reports as required by the MSA, Drs. Shah and Patel both testified that they would have monthly meetings to "review the checks and make sure everything is in order." *See* Defs' Response to Plaintiff's Statement of Material Facts ("Defs' Response") at ¶¶ 19-28.

### C.  Lease Agreements

On June 1, 2009, Garden State entered into a Lease Agreement with ADHP Real Estate, LLC ("ADHP"). Defs' Statement at ¶ 33. Dr. Patel's wife, Devika Patel, is the registered owner of ADHP. *See* Plf's Response at ¶¶ 33-35. Thomas Merola, who has since passed away, appears to have signed the lease agreement on behalf of ADHP; however, Mr. Merola's widow has reviewed the signature and believes that it is a forgery. *See id.* According to Dr. Shah, Garden State initially intended to use the 9,000 square foot space for a surgical suite, but when those plans fell through, the space was used for storing medical records. *See* Defs' Statement at ¶ 34.

In connection with this litigation, State Farm hired an appraiser to inspect the property. After conducting his inspection, the appraiser concluded that the property was far less than 9,000 square feet. Moreover, photographs attached to the appraisal report show the space to be in dismal condition: one can observe collapsing ceilings, decaying walls, exposed insulation, and hanging wires. *See* Plf's Response at ¶¶ 34-36.

Because her name appeared on the corporate paperwork for ADHP, State Farm sought to depose Ms. Patel during the course of discovery. When asked about the lessor-lessee relationship between ADHP and Garden State, Ms. Patel repeatedly invoked her Fifth Amendment right against self-incrimination. *See id.* In total, Garden State paid approximately $800,000 to ADHP in connection with the lease. *See id.*

---

[3] State Farm also alleges that Dr. Damien was unaware of the fact that Garden State had a management company. *See* Plfs' Statement at ¶ 17. Garden State does not cite the specific portion of testimony supporting its statement. Moreover, after careful review of the relevant exhibit attached to Garden State's opposition, the Court cannot find any testimony relevant to the MSA. Consequently, the Court will not consider the statement.

## D. **Services and Compensation**

While Defendants insist that Dr. Shah had a 95% stake in Garden State, her role (and compensation) at the company was limited.  From 2008 to 2012, Dr. Shah filled in as the anesthesia provider for Garden State approximately twenty-seven times.  *See* Plf's Statement at ¶ 41.  Dr. Shah's minimal involvement is unsurprising when one considers that she had a full-time job as an anesthesiologist for a different, unrelated company.  *See id*. at ¶ 18.  Accordingly, she received less than 2% of Garden State's revenues.[4]  During the same period, Dr. Patel – who, unlike Dr. Shah, was not listed as an owner of Garden State – received over 50% of Garden State's revenues. *See id*. at ¶ 20.

Garden State also hired other employees – both part-time and full-time – to perform medical services.  Drs. Dyana Aldea and Erica David were hired on a part-time basis, while Dr. Madgy Girgis was employed full-time.  While Dr. Shah testified that Dr. Damien hired Drs. Aldea and David, both of those part-time employees testified that they were hired by Dr. Patel.  *See* Plf's Statement at ¶¶ 43-44.  Drs. Aldea and David further testified that they had no dealings with Dr. Damien, and neither could remember ever meeting Dr. Shah.  In fact, neither had any idea as to whether Dr. Shah or Dr. Damien had a relationship with Garden State.  See id. at ¶¶ 45-46.

## II.   DISCUSSION

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A party must support its position by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The court considers the record in the light most favorable to the non-moving party while drawing all reasonable inferences in that party's favor.  *Bowers v. NCAA*, 475 F.3d 524, 535 (3d Cir. 2007).

### A. Statutory Scheme

Designed to "confront aggressively the problem of insurance fraud in New Jersey," the NJIFPA makes it illegal to present "any written or oral statement"[5] in support of an

---

[4] Additionally, Dr. Shah did not identify her ownership stake in Garden State on her tax returns.  *See* Plf's Statement at ¶ 26.

[5] A "statement" includes "any application, writing, notice, expression, statement, proof of loss, bill of lading, receipt, invoice, account, estimate of property damage, bill for services, diagnosis, prescription, hospital or physician record, X-ray, test result or other evidence of loss, injury or expense."  N.J.S.A. 17-33A-3.

insurance claim that knowingly contains "any false or misleading information concerning any fact or thing material to the claim." *See* N.J.S.A. 17:33A-2, A-4. Thus, a healthcare provider violates the NJIFPA where it knowingly submits claims for PIP Benefits to which it is not entitled. *Allstate Ins. Co. v. Schick*, 328 N.J.Super. 611, 628 (Law Div. 1999). A healthcare provider is not entitled to PIP Benefits if its ownership structure violates the regulations promulgated by the New Jersey Board of Medical Examiners. *See Varano, Damian & Finkel, L.L.C. v. Allstate Ins.*, Co., 366 N.J.Super. 1, 6 (App. Div. 2004); *Material Damage Adjustment Corp. v. Open MRI of Fairview*, 352 N.J.Super. 216, 799 (Law Div. 2002). In this case, the relevant Board of Medical Examiner regulation provides that "[a] practitioner may practice in a partnership, professional association, or limited liability company, but such entity shall be composed solely of health care professionals, each of whom is duly licensed or otherwise authorized to render the same or closely allied professional services within the State." N.J.A.C. 13:35-6.16(f)(2). Moreover, a healthcare entity will violate N.J.A.C. 13:35-6.16(f)(2) if it has installed a qualified health care professional as its "sham" or "paper" owner, where its "real" or "*de facto*" owner is an unqualified layperson. *See, e.g., Allstate Ins. Co. v. Orthopedic Evaluations, Inc.*, 300 N.J. 510, 514-15 (App. Div. 1997). Coming full circle, where a healthcare provider submits claims for PIP Benefits despite its willful violations of N.J.A.C. 13:35-6.16(f)(2), it will be liable under the NJIFPA. *See Schick*, 328 N.J.Super. at 628.

As previously discussed, State Farm argues that Dr. Patel was the true owner of Garden State, while Drs. Shah and Damien were sham owners. Defendants take the opposite position, arguing that no reasonable trier of fact could conclude that Garden State was actually owned and controlled by Dr. Patel. For the reasons below, the Court rejects Defendants' position and concludes that summary judgment is not warranted.

B. Application

After considering the record in a light most favorable to State Farm, the Court finds that a reasonable juror could conclude that Dr. Patel was the true owner of Garden State. Indeed, there are several pieces of evidence on the record that support State Farm's position. For the purposes of this opinion, the Court will highlight only the most salient pieces of such evidence.

**First**, Dr. Shah's limited involvement in Garden State's practice sheds doubt on Defendants' claim that she was the company's owner. A violation of N.J.A.C. 13:35-6.16(f)(2) is more likely to occur where the licensed physician who purportedly owns the practice rarely performs services for the practice's patients. *See Orthopedic Evaluations, Inc.*, 300 N.J. 510 (plenary physician was not actual owner of medical practice where he would perform services for the practice only "a few times a year"). Despite being listed as a 95% owner, Dr. Shah filled in as an anesthesia provider for Garden State only twenty-seven times over a four year period. Similarly telling is the fact that Dr. Shah received only 2% of Garden State's revenues, while Dr. Patel – who according to Defendants had no ownership interest in Garden State – received 50% of the practice's revenues. The

discrepancy between Dr. Shah's ownership stake and the percentage of revenues she received may lead a reasonable juror to conclude that she never really owned the company.

**Second**, Dr. Shah had little interaction with many of Garden State's employees. Ownership of a medical practice is more likely to be fraudulent where the licensed physician has little to no interaction with the practice's employees. *See Schick*, 328 N.J.Super. at 624; *Varano*, 366 N.J.Super. at 5. Dr. Aldea and Dr. David – both of whom were employed with Garden State – had no recollection of ever meeting Garden State's 95% owner, Dr. Shah. Both of those employees have further testified that they were interviewed by Dr. Patel.[6] Finally, neither of those doctors could recall whether Dr. Damien or Dr. Shah had any relationship with Garden State.[7] That testimony further precludes the Court from entering summary judgment in Defendants' favor.

**Third**, there is evidence suggesting that Dr. Patel did not perform his obligations under the MSA, which may support a finding that the MSA merely served as a cover for Defendants' fraudulent conduct. Garden State was well within its rights to enlist a management company to assist with certain administrative functions; however, the use of a management company is impermissible where its true purpose is to allow a non-licensed layperson to exercise ownership control over a medical practice. *See Schick*, 328 N.J.Super. at 556 (non-licensed laypersons cannot use management companies to mislead insurers into believing that a medical practice is in compliance with N.J.A.C. 13:35-6.16(f)(2)). Here, Garden State entered into a management services agreement with APDI, which was indisputably owned and operated by Dr. Patel. While Defendants claim that APDI offered good and valuable services to Garden State, there is evidence on the record suggesting otherwise. Most notably, APDI did not fill out a single business report for Garden State, despite being required to do so under the MSA. Accordingly, a reasonable juror may conclude that the MSA was nothing more than an elaborate ploy that allowed Dr. Patel to exert ownership control over Garden State without having to register himself as its actual owner.

**Fourth**, the lease agreement – and the favorable terms it conferred on Dr. Patel's wife – further supports the theory that Dr. Patel was the true owner of Garden State. As previously discussed, ADHP, which was owned and controlled by Dr. Patel's wife, received approximately $800,000 in rental payments from Garden State. However, an appraisal revealed that the property was in dismal condition. Moreover, there is evidence that an ADHP representative's signature on the lease agreement was a forgery. Additionally, State Farm likely will show the jury that Devika Patel invoked her Fifth Amendment rights when asked about Garden State's lease. Such evidence – which would

---

[6] In contrast, Dr. Shah and Dr. Patel testified that Dr. Damien conducted the interviews. However, in light of the conflicting testimony from Dr. David and Dr. Aldea, the Court is faced with a credibility issue that should be placed before a jury. *See Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2011).

[7] Such evidence may also support a claim that Defendants were in violation of 13:35-6.16(f)(3)(i), which requires that an employee's professional practice be evaluated by the employing practitioner.

6

be admissible in this civil case[8] – may tend to show that the lease was not part of an arms-length transaction, but instead was merely another tactic designed to further enrich Dr. Patel as the *de facto* owner of Garden State.

**Finally**, Dr. Patel appears to have exerted significant – if not exclusive – financial control over Garden State.  *See id.* at 625 (layperson more likely to be *de facto* owner where he or she exercises "total responsibility with respect to finances")  Dr. Patel provided Garden State with all of its initial capital.[9]  The record further reveals that Dr. Patel would give Garden State additional funds in the form of interest-free loans. A reasonable jury may find it odd that Dr. Patel was so willing to invest his assets into Garden State even though he would never be legally permitted to have an ownership stake.  Moreover, Dr. Patel enjoyed exclusive authority over Garden State's bank account, while Dr. Shah, who apparently was a 95% stakeholder, did not.  These unconventional financial arrangements could cause a reasonable juror to be skeptical of Defendants' claims regarding Garden State's ownership structure.

As indicated by the discussion above, there is ample evidence that could allow a reasonable juror to conclude that Garden State was in fact owned and controlled by Dr. Patel.  Consequently, Defendants are not entitled to summary judgment.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 16th, 2016**

---

[8] *See Rad Services, Inc. v. Aetna Cas. and Sur. Co.*, 808 F.2d 271, 277 (3d Cir. 1986).
[9] Dr. Damien also testified that he recalled Garden State being Dr. Patel's idea.